UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

PHILLIPPE` L. SMITH,                    )
                                        )
          Plaintiff,                    )          Civil Action No. 08-218-ART
                                        )
v.                                      )
                                        )          **MEMORANDUM OPINION AND**
HARLEY LAPPIN, et al.,                  )                  **ORDER**
                                        )
          Defendants.                   )
                                        )
                                        )
          *** *** *** ***

Plaintiff Phillippe' L. Smith is confined in the United States Penitentiary-Big Sandy

("USP-Big Sandy"), which is located in Inez, Kentucky.  The plaintiff—who is proceeding *in*

*forma pauperis*—has filed a prisoner *pro se* civil rights action against five defendants:  (1)

Harley Lappin, Director of the Bureau of Prisons ("BOP"); (2) "Viaz," whom the plaintiff

identifies as "Correctional Acting Captain"; (3) "Klute," whom the plaintiff identifies as

"Correctional Officer"; (4) Lt. Perrin, whom the plaintiff identifies as "Correctional Lieutenant";

and; (5) "Unknown Correctional Associate Warden."  The plaintiff has asserted claims under 28

U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics*

*Agents*, 430 U.S. 388 (1971).  In addition, some of the plaintiff's claims concern property that

has allegedly been taken by BOP officers.  To the extent that the plaintiff seeks to recover from

the United States, these claims fall under the ambit of the Federal Tort Claims Act ("FTCA"),

28 U.S.C. §§ 1346(b), 2671-2680.  Ultimately, however, all of the plaintiff's claims must be

dismissed.  First, the plaintiff's *Bivens* claims must be dismissed because it is clear from the face

of his complaint that the plaintiff has not exhausted his administrative remedies. Second, the

plaintiff's FTCA claims must be dismissed because they are barred by 28 U.S.C. § 2680(c) due

to the fact that they arise out of the detention of property by federal law enforcement officers.

Because this case was brought by a prisoner proceeding *in forma pauperis*, this Court

must screen the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. Both of these

sections require the Court to dismiss the case if the Court concludes that the case: (1) is frivolous

or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary

relief against a defendant who is immune from such relief. *Id.* §§ 1915(e)(2)(B)(i)-(iii) &

1915A(b)(1)-(2). In screening the complaint, the Court is mindful of the fact that this is a *pro*

*se* complaint. As a result, the Court must hold the complaint to less stringent standards than

those drafted by attorneys. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (quoting

*Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Additionally, the allegations in a *pro se* complaint

must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d

258, 260 (6th Cir. 1983) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)).

## I. The Plaintiff's Claims

The plaintiff has filed a twenty-two page, handwritten, single-spaced, complaint.

Portions of this document are difficult, if not impossible, to understand. Nevertheless, the Court

has attempted to organize and summarize the claims as set forth below.

## A. Claims Against BOP Director Harley Lappin

The plaintiff claims that Lappin was deliberately indifferent to him, presumably by not

preventing certain actions by the USP-Big Sandy staff members, and/or by implicitly allowing

various conditions of confinement to exist with respect to him. He also alleges that Director Lappin failed to render necessary medical and dental care, and proper transportation "of prisoners," R. 2 at 2, and that Lappin failed to provide an environment free from assault by inmates and employees, *Id*. Additionally, the plaintiff alleges that Director Lappin engaged in retaliatory actions intended to prevent the plaintiff from accessing the courts and/or appealing his criminal convictions. *See id.* at 2, 4. Specifically, the plaintiff alleges that Lappin prevented him from obtaining stamps and legal materials. *See id.* Finally, the plaintiff alleges that Director Lappin either allowed allegedly negligent and tortious conditions of confinement to exist at USP-Big Sandy, or he refused to rectify the conditions. *See id.* at 2-5.

### B. Claims Against Defendant "Correction Acting Captain" Viaz

The plaintiff alleges that in July of 2008, Defendant Viaz denied his request to be placed in protective custody. *See id.* at 5-6. The plaintiff further alleges that in July of 2008, while he was in the recreation area, Defendant Viaz authorized the confiscation of certain personal property from the plaintiff's cell, such as religious articles, legal documents, and cosmetic items. *See id.* at 6. Finally, the plaintiff alleges that Viaz refused to either compensate him for his personal items or provide him with a receipt for the property. He claims that Viaz informed him that he would not receive his legal documents until he took "an celly," *id*. at 7, which presumably means a "cell mate."

### C. Claims Against Defendant C. Klute

The plaintiff claims that Defendant Klute, whom he identifies as the "the Property Officer," *id.*, fails to document the items of personal property that were confiscated from him,

3

*id.* He further alleges that Defendant Klute "damaged" and "mixed up" his legal documents. *Id.*

### D. Claims Against Defendant Perrin

The plaintiff alleges that on July 31, 2008, Defendant Perrin directed Defendant Klute not to return any of the property confiscated from the plaintiff. *Id.* at 8. The plaintiff further alleges that on September 2, 2008, Defendant Perrin re-arranged and "mixed-up" his legal materials "in different manila envelopes" related to the above described grievances. Defendant Perrin "mixed-up" legal materials related to a criminal proceeding in which he was involved. *Id*. Finally, the plaintiff also claims that Perrin refused to allow him "to have remainder of legal materials in possession of the Federal Bureau of prisons in Special Houseing (sic) Unit Room," *id.* at 9, and that Perrin informed him that he would be restricted to one cubic square foot of legal material, *id.*[1]

### E. Claims Against "Unknown Associate Warden"

The plaintiff alleges that on August 1, 2008, an unknown "A.W." (an associate warden) was informed that the plaintiff's legal documents and other personal property were taken from him on July 31, 2008. *Id.* He further alleges that "via meeting of minds," the unknown "A.W." refused to rectify the "acts of subordinate employees." *Id*.

---

[1] These allegations actually refer to Defendant "Perry" rather than "Perrin." Since Defendant "Perry" is not mentioned anywhere else in the complaint, the Court is left to speculate as to whether "Defendant Perry" and "Defendant Perrin" are the same person. The Court concludes that in all probability, they are the same person, and that the plaintiff mistakenly referred to "Perrin" as "Perry" on page 9 of the handwritten supplement to the complaint.

F. Relief Sought

The plaintiff seeks "damages for:  (A) physical, and psychic suffering, (B) punitive and exemplary to deter, and punish defendants for violations of rights, (C) deprivations of property and liberty, (D) not being able to file in other courts to seek redress do [sic] to herein actions of defendants." *Id.* at 22.

II. Analysis

A. *Bivens* Claims

The plaintiff's *Bivens* claims must be dismissed without prejudice because it is clear from the face of his complaint that he failed to exhaust the administrative remedies available to him prior to initiating this lawsuit.[2]  The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires state and federal prisoners to exhaust all available administrative remedies before bringing an action with respect to prison conditions under federal law.  The standard complaint form that was filled out by the plaintiff contains a section requiring prisoners to

---

[2]The multi-step administrative remedies available to inmates confined in BOP institutions are set out in 28 C.F.R. §§ 542.10-.19.  Section 542.13(a) demands that an inmate first informally present his complaint to the staff (this is done via a BP-8 form), thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy.  If the inmate cannot informally resolve his complaint, then he may file a formal written administrative remedy request to the Warden (this is done via a BP-9 form).  *See id.* § 542.14(a).  If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director (this is done via a BP-10 form), *id.* § 542.15(a), and his if not satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of General Counsel (this is done via a BP-11 form), *id.*

The administrative procedure includes established response times.  *Id.* § 542.18.  As soon as an appeal is accepted and filed, the Warden has 20 days to respond; the Regional Director, 30 days; and General Counsel, 40 days.  Only one extension of time of 20-30 days, in writing, is permitted the agency.  If the inmate does not receive a response within the allotted time, including extension, he may consider the absence of response as a denial at that level.  *Id.*

explain what efforts they undertook to administratively exhaust their claims. *See* R. 2, at 10.

The plaintiff placed a check on the line indicating that he had filed a grievance regarding the

facts in his complaint. *Id.*  However, his response to the next question clearly shows that he did

not exhaust his administrative remedies. That question asks whether the plaintiff completed each

step in the BOP's multi-step administrative grievance process and instructs him to place a check

next to each step that he completed. *See id.*  The plaintiff did not place a check next to any of

the steps, *id.*, thereby indicating that he did not file a request or appeal to the Warden, did not

appeal to the Regional Director, and did not appeal to the Office of General Counsel.  Thus, it

is clear from the face of the complaint that the plaintiff did not exhaust the available

administrative remedies. This means that the plaintiff cannot possibly prevail in this action since

42 U.S.C. § 1997e(a) precludes prisoners from filing federal lawsuits concerning prison

conditions unless they have first exhausted the available administrative remedies.  As a result,

the plaintiff's complaint fails to state a claim upon which relief may be granted, and therefore

must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).  *See Meador v.*

*Pleasant Valley State Prison*, No. 07-15678, 2009 WL 1422257, at *1 (9th Cir. May 21, 2009)

("Sua sponte dismissal for failure to exhaust administrative remedies under the PLRA is only

appropriate if, taking the prisoner's factual allegations as true, the complaint establishes his

failure to exhaust and, thus, fails to state a claim upon which relief can be granted." (citing *Jones*

*v. Bock*, 549 U.S. 199, 214-15 (2007); 28 U.S.C. § 1915A(b)(1); *Carbe v. Lappin*, 492 F.3d 325,

328 (5th Cir. 2007) (holding that a case governed by the PLRA can be dismissed *sua sponte* "for

failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that

the prisoner failed to exhaust" (citing *Jones*, 549 U.S. at 214-15)); *see also Jones*, 549 U.S. at 214-15 (indicating that when the affirmative defense of failure to exhaust appears on the face of the complaint, the complaint can be dismissed *sua sponte* on the ground that it fails to state a claim).

It is true that the plaintiff alleges in his complaint that he filed BP-8 grievance forms but never received a response from prison authorities. However, even though the Court assumes this allegation to be true for the purpose of screening the complaint, it ultimately makes no difference because the plaintiff is not relieved of his obligation to exhaust the available administrative remedies simply because he never received a response to his BP-8 forms. The next step in the administrative exhaustion process after filing a BP-8 is to file a BP-9, and nothing in the applicable regulations requires a prisoner to produce—or even have—a written denial of a BP-8 prior to filing a BP-9. Specifically, the relevant regulation provides as follows:

> (a) Submission. The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred.

> (b) Extension. Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

28 C.F.R. § 542.14.

Clearly, in the absence of a written denial of a BP-8, the plaintiff would have been authorized to pursue a BP-9 Request for Administrative Remedy with the Warden. Moreover, § 542.18 clearly states that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.* § 542.18. Thus, nothing prevented the plaintiff from pursuing any subsequent BOP administrative remedy.

Finally, the Court recognizes that the Court received a letter from the plaintiff on June 24, 2009, in which the plaintiff made vague and confusing allegations concerning his attempts to file grievances. *See* R. 6. It is unclear what the letter is talking about, nor is it clear what the plaintiff hopes to accomplish with the letter. The gist of the allegations in the letter appears to be that prison officials are prohibiting the plaintiff from filing grievances and exhausting his administrative remedies. It is not entirely clear whether the plaintiff is claiming that prison officials prevented him from exhausting his administrative remedies with respect to the claims asserted in his complaint, or whether he is claiming that prison officials are preventing him from exhausting his administrative remedies with respect to claims that have arisen since he filed this lawsuit. However, considering, that the letter makes new allegations that were not made in his complaint, and that the plaintiff says in the letter that "since 6-10-09 no one will take or give grievance forms," *id.* at 2, the most logical interpretation is that the plaintiff is claiming that prison officials are preventing him from exhausting his administrative remedies with respect to claims that have arisen since he filed this lawsuit. Thus, the Court does not interpret the letter as an attempt to explain why the plaintiff failed to exhaust his administrative remedies with

8

respect to the claims asserted in his complaint.  To the extent that the letter is an attempt to amend the complaint, it is inadequate for two reasons.  First, it is not presented in the form of a motion.  This can be forgiven, though, since the plaintiff is proceeding *pro se*.  However, the letter was not accompanied with an amended complaint, and this Court has a practice of denying *pro se* plaintiffs' motions to amend unless the plaintiffs attach amended complaints to their motions.  Thus, to the extent that the letter should be interpreted as a motion to amend, it should be denied on that ground.  In short, the plaintiff is welcome to file a new lawsuit concerning the claims set forth in his letter, but those claims will not be entertained in this lawsuit.

## B. FTCA claims

The plaintiff complains that his personal property and legal documents were confiscated by prison officials, and he further complains that none of the named defendants would account for the confiscated property, restore his property and legal documents, or reprimand subordinate staff members for having removed or altered the property and documents.  To the extent that he seeks to recover from the United States, these claims fall under the FTCA.  *See* 28 U.S.C. § 2674 (*The United States* shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." (emphasis added)).

The FTCA constitutes a limited waiver of the sovereign immunity enjoyed by the United States.  It permits an action against the United States for wrongful acts committed by its employees during the course of their employment.  *See Fitch v. United States*, 513 F.2d 1013, 1015 (6th Cir. 1975).  However, there are exceptions to the waiver of sovereign immunity.  In particular, 28 U.S.C. § 2680(c) exempts claims "arising in respect of . . . the detention of any

goods, merchandise, or other property by any officer or customs or excise or any other law enforcement officer . . . ." In *Ali v. Fed. Bureau of Prisons*, 128 S. Ct. 831, 835-36 (2008), the Supreme Court held that the phrase "any other law enforcement officer" encompasses BOP corrections officers. Therefore, because the plaintiff's claims pertain to property that was detained by BOP officers, those claims clearly fall within § 2680(c). This means that the United States is immune from those claims. Accordingly, those claims fail to state a claim upon which relief may be granted, and therefore must be dismissed with prejudice. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

### III. Conclusion

For the foregoing reasons, it is hereby **ORDERED** as follows:

(1)     Plaintiff Phillippe' L. Smith's *Bivens* claims are **DISMISSED WITHOUT PREJUDICE.**

(2)     Plaintiff Phillippe' L. Smith's claims arising under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 are **DISMISSED WITH PREJUDICE**.

(3)     This action is **STRICKEN** from the docket of the Court.

(4)     Judgment shall be entered contemporaneously with this Memorandum Opinion and Order.

This the 29th day of September, 2009.



Signed By:

*Amul R. Thapar*

United States District Judge

10